IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JEREMY WATTS-KLEIN,<br><br>　　　Plaintiff,<br><br>v.<br><br>MVW US SERVICES, LLC,<br><br>　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:19-cv-00872-JNP-JCB<br><br>District Judge Jill N. Parrish |

Before the court is defendant MVW US Services, LLC's motion for summary judgment. ECF No. 64. The motion is DENIED.

### BACKGROUND

MVW is a company that sells vacation timeshares. It operates a call center where employees both assist customers with booking reservations and sell timeshares over the phone. Jeremy Watts-Klein worked for MVW at the call center. He held the position of team leader from 2015 to 2018. Watts-Klein's principal responsibility as team leader was to coach his team members to help them improve their performance. To do this, he would record and listen to calls between his team members and customers. Watts-Klein would score the team member's performance on a "monitor sheet" and email the scores to the team member. Based on these call monitors, he would coach team members to help them improve. At the end of each month, Watts-Klein would upload the scores to a database that MVW used to track the performance of each team member. For most of his tenure as team leader, Watts-Klein was required to monitor and score each team member

once a month. Sometime around July of 2018, MVW increased the frequency of monitors to three times per month.

In 2018, a number of events caused Watts-Klein to experience stress and anxiety. He was dealing with a pending divorce. Moreover, in July and August 2018, MVW changed Watts-Klein's work duties. In addition to tripling the number of monitors he needed to complete, MVW changed the monitor form, which required Watts-Klein to provide additional training to his team members. During this period of time, Watts-Klein discovered that managers were listening to his conversations with his team members in real time and monitoring his activities. MVW also moved Watts-Klein to a new team. This required that he assist team members in preparing to work from home by transferring equipment to his team members' homes and making sure that the equipment was properly set up. Because Watts-Klein's supervisor went on vacation from late August until mid-September, she was unavailable to help with his increased workload and transition logistics.

Due to the increased stress in his personal and professional life, Watts-Klein experienced insomnia in the months of July, August, and September of 2018. He often slept only two or three hours a night. His lack of sleep led to a loss of concentration. His increased stress and anxiety also caused him to experience severe stomach pain. He sought emergency medical care on two occasions for his stomach pain, but medical providers were unable to diagnose the cause. Watts-Klein did not inform MVW of these symptoms.

Watts-Klein completed his August 2018 monitors and sent emails to team members with their scores during the month of September 2018. But he forgot to upload the scores to MVW's database. There is a high volume of calls during the month of September. Accordingly, Watts-Klein could not pull his team members off the phones to conduct coaching sessions in

September for the August monitors. Instead, he scheduled meetings with his team members in October to go over both the August and September monitor scores.

Watts-Klein's long-standing practice was to record calls throughout the month and then listen to and score the calls during the last few days of the month. His immediate supervisor was aware of this practice and gave him leeway to complete the monitor sheets at the end of the month. She told Watts-Klein that she did the same thing when she was a team leader. Consistent with this long-standing practice, Watts-Klein recorded calls throughout September 2018 with the intent to listen to the recordings and score his team members' performance during the last few days of that month.

On September 26, 2018, a senior manager at MVW sent Watts-Klein an email asking why the monitor scores for his team had not yet been entered into the database for the months of August and September. Watts-Klein responded that he had forgotten to enter the scores for August and that he had not uploaded the scores for September yet because it was his practice to enter them in bulk at the end of the month. The manager responded that entering the numbers at the end of the month was unacceptable and that he needed to enter them in real time. Watts-Klein apologized, stated that he had been his practice for the past three years to enter the monitor scores at the end of the month, and committed to enter the scores contemporaneously with the monitoring session in the future.

Later that same day, Watts-Klein had a panic attack. He found it difficult to focus on his computer screen and then vomited. He felt his chest constrict and began to hyperventilate. Watts-Klein called 911 and he was transported to an emergency room. The ER doctor diagnosed the episode as a panic attack caused by anxiety. Watts-Klein believes that his panic attack stemmed from the fact that it occurred on the day that his divorce was finalized. Due to his panic attack,

MVW granted Watts-Klein leave from work from September 27, 2018 through October 16, 2018 under the Family and Medical Leave Act (FMLA). On October 16, 2018, a healthcare provider released Watts-Klein to return to work with no restrictions.

On October 17, 2018, Watts-Klein returned to work. On his first day back, his supervisor asked him to resend his August monitor scores to his team members, which he did. On October 17 and 18, 2018, Managers asked to see completed monitor forms for the month of September. Watts-Klein showed his managers a list of recorded calls from September but did not produce any completed monitor forms. On October 19, 2018, MVW suspended Watts-Klein with a recommendation that he be terminated. MVW stated on his Disciplinary Action Form that he was being recommended for termination because he had not completed the monitors for the month of September. On October 25, 2018, MVW amended Watts-Klein's suspension form to add additional allegations that he did not give the August monitor forms to his supervisor until October 18, 2018, and that more than half of his team members did not receive their August monitor forms until Watts-Klein emailed the forms to them in October. After amending the Disciplinary Action Form, MVW formally terminated Watts-Klein. On October 25, 2018, Watts-Klein's immediate supervisor also completed an annual review form, rating him as a "strong performer."

Watts-Klein sued MVW, asserting a claim that it had violated his rights under the Americans with Disabilities Act (ADA) by terminating him. He also asserted two claims under the FMLA. First, he alleged that MVW retaliated against him for taking FMLA leave. Second, he alleged that MVW interfered with the exercise of his FMLA rights. Before the court is MVW's motion for summary judgment. It argues that it is entitled to judgment as a matter of law for both the ADA claim and the FMLA claims.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

**I.     ADA DISCRIMINATION CLAIM**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). "As a general matter in an ADA discrimination claim, . . . 'an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability.'" *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 795 (10th Cir. 2020) (citation omitted). Watts-Klein asserts a claim for disability discrimination, alleging that MVW fired him because of a qualifying disability. MVW moves for summary judgment on this claim, arguing that there is no dispute of material fact that would preclude the court from finding as a matter of law that (1) Watts-Klein was not disabled, (2) Watts-Klein was not qualified

to perform the essential functions of his job, and (3) MVW did not terminate Watts-Klein because of a disability.

    *A.    Disability*

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).[1] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "The definition of disability . . . shall be construed in favor of broad coverage of individuals" under the ADA. *Id.* § 12102(4)(A). Additionally, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). "'Substantially limits' is not meant to be a demanding standard." *Id.*

"To establish an ADA disability[,] . . . a plaintiff must 'articulate with precision' both her impairment and the major life activity it substantially limited." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1218 (10th Cir. 2010). Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity are legal questions for the court. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). "However, ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury." *Id.*

Watts-Klein identifies his impairment as anxiety and argues that this condition substantially limited the life activities of sleeping, concentrating, thinking, communicating, and

---

[1] The term "disability' also encompasses "a record of such an impairment" and "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(B)–(C). But Watts-Klein does not argue that either of these alternatives apply here.

working. In support of his assertion that he was disabled, Watts-Klein produced an affidavit in which he declared that he experienced anxiety caused by personal and work-related pressures. Specifically, he declared that he experienced anxiety-induced insomnia in the months of July, August, and September of 2018. He often slept only two or three hours a night. His lack of sleep led to a loss of concentration. His insomnia made it difficult for him to stay focused and complete his work duties as efficiently as he had previously. His increased stress and anxiety also caused him to experience severe stomach pain. Watts-Klein sought emergency medical care on two occasions for his stomach pain, but medical providers were unable to diagnose the cause. Finally, on September 26, 2018, he had a panic attack, which caused him to vomit and hyperventilate. The skin on his hand turned purple and blue and his fingers locked into a claw-like shape. Watts-Klein was transported to the emergency room due to these symptoms.

     Based on these assertions, the court concludes that Watts-Klein had the impairment of anxiety and that he has identified valid major life activities allegedly affected by this impairment. Indeed, sleeping, concentrating, thinking, communicating, and working are all listed in the ADA as major life activities. 42 U.S.C. § 12102(1)(A). This leaves the question of whether Watts-Klein has produced sufficient evidence to support a conclusion that his anxiety substantially limited one or more of these life activities. Because this is a mixed question of law and fact entrusted to a jury, the court may only resolve it as a matter of law if it concludes that "reasonable minds cannot differ" on the answer to the mixed question. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *accord Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998). Viewing the facts in the light most favorable to Watts-Klein, the evidence shows that his anxiety made it difficult for him to sleep during a three-month period. He often slept for only two or three hours a night. In light of the directive to construe the term "substantially limits" broadly in favor

of expansive coverage, 29 C.F.R. § 1630.2(j)(1)(i), the court finds that a reasonable jury could conclude that Watts-Klein's impairment substantially limited the life activity of sleep.

In its briefing, MVW argues that the only evidence that Watts-Klein was disabled is the September 16, 2018 panic attack. MVW ignores other evidence of a disability contained in the Watts-Klein's affidavit, including evidence of insomnia. Because, as discussed above, Watts-Klein produced evidence that his anxiety substantially limited the life activity of sleep, the question of whether he was disabled must be left to a jury.

> B.    *Qualified Individual*

In order to prove his disability discrimination claim, Watts-Klein must also show that he was a "qualified individual" within the meaning of the ADA. *See* 42 U.S.C.A. § 12112(a). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

MVW argues that the undisputed evidence establishes that Watts-Klein could not perform the essential functions of his job, with or without accommodation. In support of this assertion, MVW cites two portions of Watts-Klein's deposition testimony. First, in response to the question of how his anxiety affected or limited his abilities at the time of the deposition, Watts-Klein responded:

> I still experience pretty high anxiety, and -- and specifically, it makes it less desirable for me to want to put myself in a high-stress situation like working for a corporate office like that where I -- I know that I am going to put myself in the danger of having a panic attack under that stress load that can develop there.

Second, in response to the question of whether he still suffered emotional distress as a result of MVW's conduct, he responded:

> I think for -- for me, honestly, it's been very difficult for me to approach working again for another corporate office or someplace that's similar to that. My stress factors and my ability to cope and manage my anxiety by being my own boss and doing my own work has, I believe, been what's saved me from having more of these attacks.
>
> So I think until I can get my own business up and functioning at that level of income, I don't think I'm going to be able to get back to that point in the near future that I can see.

This deposition testimony, however, is not probative of what Watts-Klein must prove—whether he could perform the essential functions of his job when MVW fired him. "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) (citation omitted). In both of these responses, Watts-Klein commented on his capabilities at the time of the deposition, not at the time of his termination.

Citing the deposition testimony of his supervisor, MVW also asserts that Watts-Klein was unable to perform the core functions of his position because he failed to complete the call monitors for August and September of 2018. But this argument improperly resolves disputed facts in favor of MVW rather than Watts-Klein as the nonmoving party. He testified that he had completed the August monitors and emailed the scores to his team members. Although he had forgotten to upload the scores to the central database, this is hardly evidence that he was incapable of doing so. Moreover, Watts-Klein explained that he had recorded calls for the month of September and was prepared to complete the monitor sheets in the last few days of that month, but his panic attack and FMLA leave of absence prevented him from doing so. The fact that a medical emergency prevented him from completing the call monitors on time does not conclusively establish that he was not capable of performing the task at all. Indeed, the evidence, viewed in the light most

favorable to Watts-Klein, shows that he performed the core duties of his position without accommodation for three years before he was terminated and that after his FMLA leave of absence, a doctor cleared him to return to work without restrictions. Watts-Klein returned to work ready and willing to perform those duties, and his supervisor even ranked him as a "strong performer" on his final yearly evaluation. Thus, Watts-Klein has shown that disputes of material fact preclude summary judgment on the issue of whether he was able to perform the essential functions of his job at the time of his termination.

### C. *Causation*

In order to prevail on his ADA claim, Watts-Klein must also prove that MVW terminated him because of his disability. Where there is no direct evidence of discriminatory animus, courts employ a *McDonnell-Douglas* burden shifting analysis to determine whether a plaintiff has produced sufficient evidence of causation to survive a motion for summary judgment. *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020). Under this test, the employee must first establish a prima facie case of discrimination—a requirement that the Tenth Circuit has described as not being onerous. *Id.* The burden then shifts to the employer "to articulate a 'legitimate, nondiscriminatory reason'" for the termination. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer states a nondiscriminatory reason for the termination, the burden shifts back to the employee "to demonstrate that the employer's stated reason is a pretext for discrimination." *Id*.

Watts-Klein has satisfied its burden of establishing a prima facie case of disability discrimination. As discussed above, Watts-Klein produced evidence that he was disabled and that he could perform the essential duties of his position. As to causation, MVW arguably first became aware of Watts-Klein's anxiety disability after the panic attack. MVW fired him shortly thereafter.

10

The relatively close proximity between the panic attack and his termination gives rise to a plausible inference that Watts-Klein was terminated because of disability discrimination.

MVW has also satisfied its burden to articulate a nondiscriminatory reason for the termination. It contends that it fired Watts-Klein for shirking his core job duties by failing to perform call monitors in August and September of 2018 and for deceiving his superiors about this failure, not because of disability discrimination.

The parties' main point of contention is whether Watts-Klein has produced adequate evidence showing that MVW's stated reason for the termination is merely pretext for disability discrimination. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that a defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief, (2) evidence that a defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances, or (3) evidence that a defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision that affected the plaintiff. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Additionally, a plaintiff can show pretext by "revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Aubrey*, 975 F.3d at 1015 (citation omitted).

The court finds that Watts-Klein has made an adequate showing of pretext. First, the close temporal proximity between his panic attack and his termination indicates that MVW's stated reasons for the termination were pretext. Watts-Klein had a panic attack on September 26, 2018 and was transported to an emergency room. Because he did not inform his employer of his other anxiety symptoms, this was arguably the first time that MVW learned or suspected that he had a

disability. Watts-Klein then took FMLA leave between September 27 and October 16. He returned to work on October 17 and was informed that he was being suspended with a recommendation of termination on October 19. Thus, the decision to essentially terminate Watts-Klein was made about three weeks after MVW learned of his disability and only three days after he returned from FMLA leave related to his disability. Although "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext," *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007), the court considers this evidence in conjunction with Watts-Klein's other evidence of pretext.

Second, MVW's stated reason for the termination—his poor work performance—is contradicted by his final performance review. On the same day that MVW officially terminated Watts-Klein, his immediate supervisor completed an annual review form, rating him as a "strong performer." The review form listed the evaluation period from October 25, 2017 through October 25, 2018—the date of his termination.[2] The positive performance review stands in stark contrast to MVW's assertion that Watts-Klein's poor job performance during the same period of time merited termination. Such an inconsistency is evidence of pretext. *See Aubrey*, 975 F.3d at 1015.

Third, Watts-Klein has presented evidence that one of the reasons MVW gave for his termination—the tardiness of the August monitors—was false. MVW argues that it is undisputed that Watts-Klein did not complete the August monitor score sheets until October 18, 2018. But

---

[2] In her deposition, the supervisor asserted that the review form was for the time period of August 2017 through early August 2018. She testified that she was unable to complete the form in August 2018 because she had gone on vacation. She completed the form on the date of Watts-Klein's termination because someone told her that his file had to be up to date. Of course, this testimony contradicts the dates found on the form itself. For the purposes of this motion for summary judgment, the court must resolve these disputed facts in favor of Watts-Klein.

this assertion ignores Watts-Klein's deposition testimony that he completed the August score sheets in August and emailed then to his team members in September. At this stage of the proceedings, the court must resolve this factual dispute in favor of Watts-Klein.[3] Thus, there is evidence that one of MVW's proffered reasons for termination was false. Giving a false reason for termination may support an inference that the stated reason was pretext for disability discrimination. *Kendrick*, 220 F.3d at 1230.

Fourth, Watts-Klein has presented evidence that calls into question the initial justification for his suspension and termination—his failure to complete the September monitors. Watts-Klein presented evidence that for three years he recorded calls each month and then listened to and scored the calls in the last few days of the month. He also testified that his supervisor was well aware of this practice and gave him leeway to complete the monitor sheets at the end of the month. On September 26, 2018, a senior manager informed Watts-Klein for the first time that he needed to complete the monitor sheets and upload the scores throughout the month. Watts-Klein subsequently took FMLA leave from September 27, 2018 through October 16, 2018 and was unable to complete the September monitors as he had planned. On his first day back to work, Watts-Klein's supervisor asked to see the September monitor sheets despite the fact that she had reason to believe that he had not completed the September monitor sheets because he had unexpectedly missed work for the last few days of September, when he would traditionally complete the monitors.

---

[3] Watts-Klein's supervisor testified that unnamed IT employees told her that the August monitor sheets were created in October. Watts-Klein objects to this testimony as hearsay. Because the court must resolve disputed facts in favor of Watts-Klein and credit his testimony that he created the monitor sheets in August, the court need not rule on this objection.

Thus, viewing the evidence in the light most favorable to Watts-Klein, on September 26, 2018, he was informed for the first time that the way he had performed his job for three years was no longer acceptable. MVW then fired Watts-Klein without giving him a reasonable opportunity to change the way that he performed his job duties. Indeed, a jury could conclude that when he returned from FMLA leave, his supervisors had a plan to use his inability to complete the September monitors as a reason to terminate him. Therefore, Watts-Klein has presented evidence that when it fired him, MVW acted contrary to an unwritten but long-standing company practice of allowing team leaders to conduct and complete monitors at the end of the month. Acting contrary to this unwritten policy can be evidence of pretext. *Id.* Moreover, a jury could conclude that this reason for terminating Watts-Klein was unreasonable because he was not given an opportunity to change the way that he completed his call monitors. Of course, MVW had no obligation to behave reasonably in the way that it enforced new policies or fired employees. But an unreasonable justification for termination can be evidence that the justification is merely pretext for disability discrimination.

Fifth, MVW's stated rationale for firing Watts-Klein shifted after it learned that he would challenge his termination. The reason that MVW originally gave for his pending termination was his failure to complete the September monitors. After Watts-Klein decided to challenge his termination through MVW's internal procedures, MVW added an additional reason for termination: his alleged failure to complete the August monitors. A jury could infer that MVW realized that the September monitor rationale was problematic given that Watts-Klein missed work that month due to his disability and decided that it needed to bolster its justification for the termination by adding a new rationale. Thus, MVW's addition of a new reason for the termination indicates that both of the stated reasons are pretextual.

For these reasons, the court concludes that Watts-Klein has presented sufficient evidence of pretext to permit his ADA claim to be decided by a jury. The court denies MVW's motion for summary judgment on this claim.

## II. FMLA RETALIATION CLAIM

Under 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. The Tenth Circuit has interpreted this provision to permit a claim for retaliation if the employer takes an averse employment action against an employee because the employee takes FMLA leave. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170–71 (10th Cir. 2006). As is the case for an ADA discrimination claim, courts employ the *McDonnell Douglas* burden shifting framework to determine whether summary judgment on an FMLA retaliation claim is appropriate:

> Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.

*Id.* at 1170 (citations omitted).

Watts-Klein claims that MVW is liable for retaliation because it fired him for taking FMLA leave. MVW argues that it is entitled to summary judgment on this claim because it terminated Watts-Klein for a legitimate reason and there is no evidence that its stated reasons for termination were pretextual.

For the same reasons articulated above, the court disagrees. Watts-Klein took FMLA leave immediately after he experienced a panic attack and MVW became aware of his anxiety. Thus, the

15

same indications of pretext for the ADA discrimination claim—temporal proximity, the positive annual review, allegedly false claims about the August monitors, acting contrary to unwritten policy when criticizing Watts-Klein's handling of the September monitors, and the shifting rationale for the termination—also apply to the FMLA retaliation claim. Indeed, Watts-Klein presented evidence that the reason he was unable to complete the September monitors was that he took FMLA leave from the last part of September through mid-October. Thus, Watts-Klein has presented evidence that MVW's use of his failure to complete the September monitors as a justification for termination was merely pretext for retaliating against him for taking FMLA leave. For these reasons, the court concludes that there are sufficient indications of pretext to present the issue of causation to the jury. The court denies summary judgement on this claim.

### III.  FMLA INTERFERENCE CLAIM

Under 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the right to take FMLA leave. The Tenth Circuit held that this provision creates a cause of action against an employer for interfering with an employee's FMLA rights, including the right to take up to 12 weeks of unpaid leave and the right to be reinstated to the same or an equivalent position after returning from leave. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006). "To establish a claim of FMLA interference under § 2615(a)(1), an employee must show '(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.'" *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014) (citation omitted).

MVW argues that the court should grant summary judgment on this claim because Watts-Klein has not shown a dispute of material fact as to the second and third elements of the interference claim.

A. *Adverse Action*

First, MVW argues that it should prevail as a matter of law because it did not take any adverse action that interfered with Watts-Klein's right to take FMLA leave. MVW asserts that it allowed Watts-Klein to take FMLA leave and then reinstated him to his same position when he returned to work. In response, Watts-Klein contends that his reinstatement was illusory because he was effectively fired three days after he returned from FMLA leave. The court agrees with Watts-Klein and finds that disputes of material fact preclude summary judgment on this issue.

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007) is pertinent here. In that case, an employee took FMLA leave. *Id.* at 1285. The employee returned to work and was reinstated to her same position. *Id.* at 1286. Four days later, the employer informed the employee that it was eliminating her position and that she would be terminated. *Id.* The employee sued the employer, asserting an FMLA interreference claim. *Id.* at 1286–87. The district court concluded that the employee could not maintain an interference claim based on a termination that occurred after reinstatement. *Id.* at 1288. The Tenth Circuit reversed, holding that where an employer cites factors predating reinstatement to justify termination,

> the plaintiff is not foreclosed from bringing an interference claim. To hold otherwise would create a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim.

17

*Id*. Thus, if an employee can show that termination was a foregone conclusion by the time of reinstatement such that the restoration of work duties was merely illusory, the employee can satisfy the second element of an interference claim. *Id.*; *accord Dalpiaz* at 1132 ("[A]n interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave.").

MVW cited only concerns predating Watts-Klein's return from FMLA leave—the failure to complete the August and September call monitors—when it effectively fired him three days after returning to work. Under these facts, a jury may conclude that MVW had decided to terminate Watts-Klein before he returned to work and that his reinstatement was illusory. Accordingly, the court denies summary judgment on the adverse action element of the FMLA interference claim.

      B.      *Relation to the Exercise of FMLA Rights*

"If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'" *Dalpiaz*, 760 F.3d at 1132 (alteration in original) (citation omitted). MVW argues that it has satisfied this burden as a matter of law because the record evidence supports only the conclusion that it fired Watts-Klein for performance issues unrelated to his FMLA leave. For the same reasons that the court has rejected this argument in relation to the ADA discrimination claim and the FMLA retaliation claim, the court also rejects MVW's assertion that it is entitled to summary judgment on the FMLA interference claim. As discussed above, Watts-Klein has presented evidence that MVW's stated reasons for the termination were pretextual and that the real reason for firing him was related to his exercise of his FMLA rights. Thus, the court denies summary judgment on the relationship element of the FMLA interference claim.

## CONCLUSION

For the reasons stated above, the court DENIES MVW's motion for summary judgment.

DATED September 28, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge